IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
2:14-CV-30-FL

| | |
|---|---|
| PAMELA GARRETT,<br><br>    Plaintiff,<br><br>v.<br><br>ANTHONY GARRETT; TERRENCE<br>BEAMON; SHIRLEY JOHNSON, N.C.<br>Clerk of Court; ARCHER WILLIAMS, N.C.<br>Sheriff; BEVERLY WATFORD-ACORS;<br>and LEO MARTY ACORS,<br><br>    Defendants. | **ORDER and**<br>**MEMORANDUM AND**<br>**RECOMMENDATION** |

This pro se case is before the court on the motion to proceed *in forma pauperis* under 28 U.S.C. § 1915(a)(1) (D.E. 8) by plaintiff Pamela Garrett ("plaintiff") and for a frivolity review pursuant to 28 U.S.C. § 1915(e)(2)(B). These matters were referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), respectively. (*See* 1 July 2014 Public D.E.).

### ORDER ON *IN FORMA PAUPERIS* MOTION

The court finds that plaintiff has adequately demonstrated her inability to prepay the required court costs. Her motion to proceed *in forma pauperis* (D.E. 8) is therefore GRANTED.

### MEMORANDUM AND RECOMMENDATION ON FRIVOLITY REVIEW

**I.   BACKGROUND**

Plaintiff, a New York resident, initially filed her case in the Southern District of New York on 6 June 2014. (*See, e.g.*, Compl. (D.E. 3) 1). In addition to a motion to proceed *in forma pauperis* (D.E. 2), plaintiff filed a proposed complaint and a proposed order to show cause for a preliminary injunction and temporary restraining order ("Proposed Show Cause Order") (D.E. 1

at 1-2) with a supporting affirmation (*id.* at 3). The case was transferred from that district to this court on 12 June 2014. (*See* D.E. 5; Transfer Order (D.E. 4)). This court directed plaintiff to complete the form used by this court for applications brought *in forma pauperis* (*see* D.E. 7), which she did (*see* D.E. 8).

In her complaint, plaintiff names as defendants: (1) Anthony Garrett ("Garrett"), her brother; (2) Terrence Beamon ("Beamon"), her cousin; (3) Shirley Johnson,[1] Clerk of Court, apparently of Hertford County ("Clerk Johnson"); (4) Archer Williams, Hertford County Sheriff ("Sheriff Williams"); (5) Beverly Watford-Acors ("Watford-Acors"), her cousin; and (6) Leo Marty Acors ("Acors"), her cousin. (Compl. 1-2 ¶ I(B)).[2] As best the court can determine, the complaint, as supplemented by statements in the Proposed Show Cause Order and supporting affirmation, alleges as follows:

Plaintiff's mother died on 11 May 2014. (*See id.* at 3 ¶ III(B); Affirm.). Garrett and Beamon acted as administrators of plaintiff's mother's estate.[3] (Compl. 2 ¶ II (B)). Plaintiff was denied the right to request removal of them as administrators or to herself apply to be administrator. (*Id.* at 3 ¶ III(C)). Plaintiff's mother's will was never probated, and plaintiff was denied the right to contest the will in probate. (*Id.*; Proposed Show Cause Order; Affirm.).

Garrett and Beamon stole her mother's jewelry, car, money, and other belongings, items that plaintiff was entitled to inherit. (Compl. 3 ¶ III(C), 4 ¶ V; Affirm.). In addition, they conspired to sell her mother's car to Watford-Acors and Acors, and forged documents and stole house keys. (Compl. 3 ¶ III(C)). Garrett and Beamon assaulted, battered, and threatened

---

[1] On page 2 of her complaint, plaintiff refers to this defendant as Shirley "Jones" rather than "Johnson." Because she uses Johnson in the caption and on page 3 of the complaint, the court assumes that she intends to name Shirley Johnson.

[2] Citation to the complaint is to the pages assigned by the court's electronic CM/ECF filing system.

[3] Plaintiff's filings do not make clear whether she is alleging that Garrett and Beamon were formally appointed as administrators or had improperly assumed that role without formal appointment.

2

plaintiff when she tried to stop them. (*Id.* at 3 ¶ IV; Proposed Show Cause Order). On one occasion, Garrett punched plaintiff in the back of the head as she was trying to escape from him, grabbed her and yanked her arm, screamed in her face, cursed at her, and threatened her life. (Compl. 3 ¶ IV). She called the North Carolina Sheriff's Office in connection with Garrett's attack on her, but she was denied help. (*Id.* at 3 ¶¶ III(C), IV). The events in question allegedly occurred between 11 May 2014 and 5 June 2014 in North Carolina, Virginia, and New York. (*Id.* at 2 ¶ III(A), (B)).

As relief, plaintiff seeks the value of the property in her mother's estate to which she was entitled but of which she was deprived by the wrongful acts of defendants. (*Id.* at 4 ¶ V). She also seeks a temporary restraining order and preliminary injunction against Garrett and Beamon enjoining them from stealing, selling, trading, and bartering the property in her mother's estate. (*See* Proposed Show Cause Order 1).

## II. APPLICABLE LEGAL STANDARD FOR FRIVOLITY REVIEW

After allowing a party to proceed *in forma pauperis*, as here, the court must conduct a frivolity review of the case pursuant to 28 U.S.C. § 1915(e)(2)(B). The court must determine whether the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from an immune defendant, and is thereby subject to dismissal. 28 U.S.C. § 1915(e)(2)(B); *see Denton v. Hernandez*, 504 U.S. 25, 27 (1992) (standard for frivolousness).

Under Rule 8 of the Federal Rules of Civil Procedure, a pleading that states a claim for relief must contain "a short and plain statement of the grounds for the court's jurisdiction . . . [and] a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(1), (2). Case law explains that the complaint must "'state[ ] a plausible claim for

3

relief' that 'permit[s] the court to infer more than the mere possibility of misconduct' based upon 'its judicial experience and common sense.'" *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Likewise, a complaint is insufficient if it offers merely "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted)).

In evaluating frivolity specifically, a pro se plaintiff's pleadings are held to "less stringent standards" than those drafted by attorneys. *White v. White*, 886 F.2d 721, 722-23 (4th Cir. 1989). Nonetheless, the court is not required to accept a pro se plaintiff's contentions as true. *Denton*, 504 U.S. at 32. Instead, the court is permitted to "pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). Provided that a plaintiff's claims are not clearly baseless, the court must weigh the factual allegations in plaintiff's favor in its frivolity analysis. *Denton*, 504 U.S. at 32. The court must read the complaint carefully to determine if a plaintiff has alleged specific facts sufficient to support the claims asserted. *White*, 886 F.2d at 724.

A court may consider subject matter jurisdiction as part of the frivolity review. *See Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999) (holding that "[d]etermining the question of subject matter jurisdiction at the outset of the litigation is often the most efficient procedure"); *Cornelius v. Howell*, No. 3:06-3387-MBS-BM, 2007 WL 397449, at *2-4 (D.S.C. 8 Jan. 2007) (discussing the lack of diversity jurisdiction during frivolity review as a basis for dismissal). "Federal courts are courts of limited jurisdiction and are empowered to act only in those specific situations authorized by Congress." *Bowman v. White*, 388 F.2d 756, 760 (4th Cir. 1968). The

presumption is that a federal court lacks jurisdiction in a particular case unless it is demonstrated that jurisdiction exists. *Lehigh Min. & Mfg. Co. v. Kelly*, 160 U.S. 327, 336-37 (1895). If the court determines that it lacks subject matter jurisdiction, it must dismiss the action. Fed. R. Civ. P. 12(h)(3).

The burden of establishing subject matter jurisdiction rests on the party invoking jurisdiction, here plaintiff. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982) ("The burden of proving subject matter jurisdiction . . . is on the plaintiff, the party asserting jurisdiction."). More specifically, "the party who seeks the exercise of jurisdiction in his favor" has the burden to "allege in his pleading facts essential to show jurisdiction." *McNutt v. General Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936); Fed. R. Civ. P. 8(a)(1) ("A pleading that states a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction."). Failure to include such a statement is not fatal, however, if the plaintiff is proceeding pro se, as here. *See Moore v. Mt. St. Joseph High School*, No. CCB-14-1788, 2014 WL 4854625, at *1 (D. Md. 29 Sep. 2014) ("Although [pro se plaintiff's] complaint lacks any such 'short and plain statement of the grounds for the court's jurisdiction,' that omission alone is not fatal, for the court may still wield 'jurisdiction if the facts supporting jurisdiction have been clearly pleaded.'" (quoting *Pinkley, Inc. v. City of Frederick, Md.*, 191 F.3d 394, 399 (4th Cir. 1999))); *Morrison v. Monroe*, No. 7:10-CV-132-FL, 2010 WL 5055985, at *3 (E.D.N.C. 6 Dec. 2010) (proceeding to substantive analysis of jurisdiction claim where pro se plaintiff failed to include Rule 8(a)(1) jurisdictional statement in the complaint).

One basis for subject matter jurisdiction, so-called federal question jurisdiction, is that a claim arises under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. Another basis is diversity of citizenship or so-called diversity jurisdiction, which requires that the

citizenship of the plaintiffs be different from that of the defendants and the amount in controversy exceeds $75,000. *Id.* § 1332; s*ee Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 372-74 (1978). There are also statutes conferring jurisdiction for particular types of cases.

## III. ANALYSIS OF PLAINTIFF'S COMPLAINT

Plaintiff does not identify specifically in her complaint the causes of action she intends to assert in this action. Giving her complaint a liberal reading, as required, it appears that she asserts state law tort claims against Garrett, Beamon, Watford-Acors, and Acors pursuant to the court's diversity jurisdiction. Her claims against Clerk Johnson appear to relate to denial of her purported right to seek removal of Garrett and Beamon as administrators, to apply to serve herself as administrator, and to contest her mother's will in probate. The only allegation relating to Sheriff Williams—that the Sheriff's Office did not respond when she called in connection with the beating by Garrett—is presumably asserted pursuant to 42 U.S.C. § 1983 ("§ 1983"). The court will address each group of claims separately.

### A. State Law Tort Claims against Garrett, Beamon, Watford-Acors, and Acors

#### 1. Diversity Jurisdiction

As noted, a case may be commenced in federal court where diversity jurisdiction exists, that is, where the parties are citizens of different states and the amount in controversy exceeds $75,000, 28 U.S.C. § 1332. For the purposes of diversity jurisdiction, state citizenship is determined by domicile, not residence. *Axel Johnson, Inc. v. Carroll Carolina Oil Co., Inc.*, 145 F.3d 660, 663 (4th Cir. 1998); *Johnson v. Xerox Educ. Solutions LLC*, No. GJH–14–CV–15422, 2014 WL 5361302, at *2 (D. Md. 20 Oct. 2014) ("[A]n individual's residence at the time a lawsuit is commenced provides prima facie evidence of his domicile."). The court considers the

totality of the circumstances in determining a party's domicile. *Brissett v. Shoaf Law Firm, P.A.*, No. 5:12–CV–781–FL, 2013 WL 6713123, at *4 (E.D.N.C. 19 Dec. 2013).

Here, plaintiff has alleged in her complaint that she is a citizen of New York and that Garrett and Beamon are citizens of Virginia, and Watford-Acors and Acors are citizens of Maryland. Accordingly, the citizenship of the parties in question has been sufficiently alleged for purposes of diversity jurisdiction, and the court will turn to the amount in controversy.

The starting place for determination of the amount in controversy is the complaint. *JTH Tax, Inc. v. Frashier*, 624 F.3d 635, 638 (4th Cir. 2010); *Thind v. PNC Bank, Nat. Ass'n*, No. 5:13–CV–00619–FL, 2013 WL 6326600, at *2 (E.D.N.C. 4 Dec. 2013) ("Generally, 'the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy . . .'" (quoting 28 U.S.C. § 1446(c)(2))). Where, as here, however, there is no *ad damnum* clause in the complaint seeking an amount exceeding $75,000, the burden is on the plaintiff to establish by a preponderance of the evidence that the jurisdictional minimum is nevertheless met. *Tabor v. Tabor*, No. 2:13-cv-20643, 2013 WL 5670916, at *2 (S.D.W. Va. 15 Oct. 2013); *Joy Family Ltd. P'ship v. United Fin. Banking Cos.*, No. ELH-12-3741, 2013 WL 4647321, at *7 (D. Md. 28 Aug. 2013). In determining whether plaintiff has met this burden, the court may consider the entire record, including "'the type and extent of the plaintiff's injuries and the possible damages recoverable therefor[].'" *Tabor*, 2013 WL 5670916, at *2 (quoting *McCoy v. Erie Ins. Co.*, 147 F. Supp. 2d 481, 489 (S.D.W. Va. 2001)).

In making "its own independent inquiry to determine whether the amount in controversy satisfies the jurisdictional minimum," the court is "not required 'to leave common sense behind.'" *Tominak v. Capoullez*, No. 5:13–CV–121, 2013 WL 5913848, at *3 (N.D.W. Va. 4 Nov. 2013) (quoting *Mullins v. Harry's Mobile Homes*, 861 F. Supp. 22, 24 (S.D.W. Va. 1994)).

7

In addition, the court need not weigh the underlying merits of the plaintiff's claims. *A2C2 P'ship LLC v. Constellation Software, Inc.*, No. 2:13–cv–01449, 2013 WL 5204756, at *2 (S.D.W. Va. 13 Sept. 2013). Instead, it should consider "'the judgment that would be entered if the plaintiff prevailed on the merits of his case.'" *Id.* (quoting *Sayre v. Potts*, 32 F. Supp. 2d 881, 886 (S.D.W. Va. 1999)); *Burdette v. ReliaStar Life Ins. Co.*, No. 2:06-0210, 2006 WL 1644234, at *1 (S.D.W. Va. 12 Jun. 2006) ("If not specified in the complaint, the amount in controversy must be determined on the likely monetary relief that may be granted to a plaintiff if he succeeds on all of his claims asserted in good faith.").

Here, plaintiff has alleged not only personal injuries suffered from being punched in the head, but also loss of property including a car, jewelry, money, and other belongings. For purposes of this frivolity review, the court finds that plaintiff has made an adequate showing that the jurisdictional amount has been satisfied. It will therefore proceed to consider whether plaintiff has sufficiently stated any claims for relief.

### 2. Claims against Garrett, Beamon, Watford-Acors, and Acors

#### a. Assault

Plaintiff appears to allege a claim for assault against both Garrett and Beamon. Under North Carolina law, "'[t]he elements of assault are intent, offer of injury, reasonable apprehension, apparent ability, and imminent threat of injury.'" *Wilkerson v. Duke Univ.*, __ N.C. App. __, 748 S.E.2d 154, 159 (2013) (quoting *Hawkins v. Hawkins*, 101 N.C. App. 529, 533, 400 S.E.2d 472, 475 (1991), *aff'd*, 331 N.C. 743, 417 S.E.2d 447 (1992)). In her complaint, plaintiff alleges that Garrett yelled in her face and cursed at her, saying that he would smash her head, and come to New York to get rid of her since he knows where she lives. (Compl. 3 ¶ IV). He also, in fact, hit her. (*Id.*). She contends that Beamon said that he was "going to get real evil

8

and nasty on [her] too." (*Id.*). These allegations are sufficient to state a claim for assault against Garrett and Beamon for purposes of this frivolity review.

### b. Battery

A claim for battery is alleged when the plaintiff's person "is offensively touched against his will[.]'" *Wilkerson*, 748 S.E.2d at 159 (quoting *Ormond v. Crampton*, 16 N.C. App. 88, 94, 191 S.E.2d 405, 410 (1972)). Here, plaintiff alleges that both Garrett and Beamon battered her. (Compl. 3 ¶¶ III(C), IV; Proposed Show Cause Order). She details that in one incident Garrett punched her in the back of the head as she was trying to get away from him, and grabbed her and yanked her arm. (Compl. 3 ¶ IV). These allegations are sufficient to state a claim of battery against Garrett and Beamon for purposes of this frivolity review.

### c. Conversion

The basic elements of a claim for conversion are ownership by plaintiff and wrongful conversion by defendant. *Lake Mary Ltd. P'ship v. Johnston*, 145 N.C. App. 525, 531-32, 551 S.E.2d 546, 552 (2001); *see also Estate of Graham v. Morrison*, 168 N.C. App. 63, 72, 607 S.E.2d 295, 302 (2005) (conversion defined as "'(1) the unauthorized assumption and exercise of the right of ownership; (2) over the goods or personal property; (3) of another; (4) to the exclusion of the rights of the true owner'" (quoting *Di Frega v. Pugliese*, 164 N.C. App. 499, 509, 596 S.E.2d 456, 463 (2004))). Here, plaintiff has alleged that Garrett and Beamon stole her mother's jewelry, car, money, and other belongings, items plaintiff claims she was entitled to inherit. (*E.g.*, Compl. 3 ¶ III(C)). She also alleges that Garrett and Beamon sold her mother's car to Watford-Acors and Acors while still in her mother's name and forged documents. (*Id.*). The court finds these allegations sufficient to state a claim for conversion against Garrett, Beamon, Watford-Acors, and Acors for purposes of this frivolity review.

#### d. Civil Conspiracy

"The elements of a civil conspiracy are: (1) an agreement between two or more individuals; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) resulting in injury to plaintiff inflicted by one or more of the conspirators; and (4) pursuant to a common scheme." *Strickland v. Hedrick*, 194 N.C. App. 1, 19, 669 S.E.2d 61, 71 (2008) (quoting *Privette v. Univ. of N.C.,* 96 N.C. App. 124, 139, 385 S.E.2d 185, 193 (1989)). Under North Carolina law, "there is no independent cause of action for civil conspiracy; the claim can arise only where there is an underlying claim for unlawful conduct." *Byrd v. Hopson*, 265 F. Supp. 2d 594, 599 (W.D.N.C. 2003). Here, plaintiff has alleged that Garrett, Beamon, Watford-Acors, and Acors conspired to wrongfully convert her mother's possessions. (*E.g.*, Compl. 3 ¶ III(C)). This claim is sufficiently alleged for purposes of this frivolity review.

#### e. Request for Injunctive Relief

As noted, by filing with her proposed complaint a proposed show cause order and supporting affirmation, plaintiff sought at that time a temporary restraining order and preliminary injunction enjoining Garrett and Beamon from stealing, selling, trading, and bartering the property in her mother's estate. Judicial efficiency dictates that any such motion be considered in light of the current circumstances presented in this matter, rather than simply those that existed at the time the case was commenced. The motion for injunctive relief should accordingly be denied without prejudice to plaintiff's reasserting it.

### B. Claims against Clerk Johnson

The conduct plaintiff alleges against Clerk Johnson is that she denied plaintiff's right to challenge Garrett and Beamon's administering her mother's estate, to apply to serve as administrator herself, and to challenge her mother's will in probate. (*Id.* at 3 ¶ III(C)). To the

10

extent these limited allegations even state claims upon which relief could be granted, the claims are subject to dismissal for lack of subject matter jurisdiction and are otherwise barred by quasi-judicial immunity.

The *Rooker-Feldman* doctrine bars federal courts from sitting "in direct review of state court decisions." *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482-84 (1983); *see Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923). "[T]he *Rooker-Feldman* doctrine applies only when the loser in state court files suit in federal district court seeking redress for an injury allegedly caused by the state court's decision itself." *Davani v. Virginia Dep't of Transp.*, 434 F.3d 712, 713 (4th Cir. 2006) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005)). This doctrine also prohibits a district court from reviewing constitutional claims that are "inextricably intertwined" with a state court decision. *Shooting Point, LLC v. Cumming*, 368 F.3d 379, 383 (4th Cir. 2004). A constitutional claim is "inextricably intertwined" with a state court decision if "'success on the federal claim depends upon a determination that the state court wrongly decided the issues before it.'" *Id.* (quoting *Plyler v. Moore*, 129 F.3d 728, 731 (4th Cir. 1997)); *see also Curley v. Adams Creek Assocs.*, 409 Fed. Appx. 678, 680 (4th Cir. 2011) (holding that *Rooker-Feldman* precluded subject matter jurisdiction over plaintiff's claim that the state court violated her due process rights by failing to give her notice before disposing of real property owned by her); *Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 202 (4th Cir. 1997) (holding that a federal claim is "inextricably intertwined" where "'in order to grant the federal relief sought, the federal court must determine that the [state] court judgment was erroneously entered or must take action that would render the judgment ineffectual'" (quoting *Ernst v. Child and Youth Servs.*, 108 F.3d 486, 491 (3d Cir. 1997))).

11

In other words, *Rooker-Feldman* applies "when the federal action 'essentially amounts to nothing more than an attempt to seek review of [the state court's] decision by a lower federal court.'" *Davis v. Durham Mental Health Devel. Disabilities Substance Abuse Area Auth.*, 320 F. Supp. 2d 378, 388 (M.D.N.C. 2004) (quoting *Plyer*, 129 F.3d at 733). "The key inquiry is not whether the state court ruled on the precise issue raised in federal court, but whether the 'state-court loser who files suit in federal court seeks redress for an injury caused by the state-court decision itself.'" *Willner v. Frey*, 243 Fed. Appx. 744, 747 (4th Cir. 2007) (quoting *Davani*, 434 F.3d at 718). "'[A] party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights.'" *Brown & Root, Inc. v. Breckenridge*, 211 F.3d 194, 198 (4th Cir. 2000) (quoting *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994)).

The injuries plaintiff purports to allege in this case against Clerk Johnson result from alleged improprieties in the estate proceedings, namely, denial of her purported right to challenge service of Garrett and Beamon as administrators, to apply to be administrator herself, and to contest her mother's will. Matters relating to these state estate proceedings are not appropriately brought before this court because a determination of plaintiff's claims in her favor would necessarily require this court to find that the state court estate proceedings were instituted in an improper manner, produced an improper result, or both. The *Rooker-Feldman* doctrine prohibits this court from making such a determination. Plaintiff, of course, retained access to the state courts for pursuit of such claims. The claims should accordingly be dismissed. *See Dye v. Hatfield,* No. Civ.1:03CV01077, 2004 WL 3266029, at *5 (M.D.N.C. 26 Aug. 2004) (finding that civil rights claims based upon "an alleged conspiracy among virtually everyone involved

with the North Carolina state court system" which "appear to be nothing more than a collateral attack on decisions of the North Carolina state courts in civil and criminal matters" were barred by *Rooker-Feldman*); *Newman v. Alexander*, No. Civ. A. 7:02CV01024, 2003 WL 1746320, at *4 (W.D. Va. 1 Apr. 2013) ("[Plaintiff] is essentially attempting to attack her criminal conviction by accusing the judicial officers involved in her criminal prosecution of conspiring against her. The *Rooker-Feldman* doctrine prohibits this court from hearing claims that seek to determine whether the decisions of a state court were wrong.").

In addition, quasi-judicial immunity provides an independent basis for the dismissal of claims relating to Clerk Johnson. "A clerk of court is entitled to quasi-judicial immunity when carrying out judicial functions." *Bayyari v. Shapiro,* No. 5:14–CV–312–FL, 2014 WL 5427986, at *4 (E.D.N.C. 2 Sept. 2014); *see also Williams v. Cooper*, No. 3:12–cv–83–RJC, 2012 WL 4498271, at *3 (W.D.N.C. 28 Sept. 2012) ("Court clerks are accorded derivative absolute immunity when they act in obedience to judicial order or under the court's direction."). Here, the only conduct in plaintiff's complaint attributable to Clerk Johnson concerns matters directly relating to proceedings in that court. Plaintiff's claims against Clerk Johnson are therefore barred by quasi-judicial immunity. *See, e.g., Green v. North Carolina*, No. 4:08–CV–135–H, 2010 WL 3743767, at *3 (E.D.N.C. 21 Sept. 2010) ("Inasmuch as plaintiff is attempting to make claims which arise out of actions by the superior court judge and/or the clerk of court within their capacities as judicial officers, these claims are barred by the doctrine of judicial immunity.").

### C. Claims against Sheriff Williams

As noted, plaintiff's sole allegation against Sheriff Williams—that she received no response to her call to the Sheriff's Office for help—is presumably asserted pursuant to § 1983. (*See* Compl. 3 ¶¶ III(C), IV). To establish a claim under § 1983, a plaintiff must prove: (1) the

violation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation of the right was committed by a person acting under the color of state law. *Williams v. Studivent*, No. 1:09CV414, 2012 WL 1230833, at *4 (M.D.N.C. 12 Apr. 2012) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)). To show that a defendant acted under the color of state law, "'[t]he person charged must either be a state actor or have a sufficiently close relationship with state actors such that a court would conclude that the non-state actor is engaged in the state's actions.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615-16 (4th Cir. 2009) (quoting *DeBauche v. Trani*, 191 F.3d 499, 506 (4th Cir. 1999)).

The allegations against Sheriff Williams are so general and so conclusory that they simply do not state any conduct that would rise to the level of a constitutional violation and are subject to dismissal for failure to state a claim. *See Harris v. City of Virginia Beach, VA*, 11 Fed. Appx. 212, 215 (4th Cir. 2001) (affirming district court's ruling that a plaintiff "'alleging unlawful intent in conspiracy claims under § 1985(3) or § 1983 [must] plead specific facts in a nonconclusory fashion to survive a motion to dismiss'") (quoting *Gooden v. Howard County, Md.*, 954 F.2d 960, 969-70 (4th Cir. 1992))). Similarly, the absence of allegations of wrongdoing by Sheriff Williams personally defeat any claim against him in his supervisory capacity. *Toppin v. Kornegay*, No. 5:12-CT-3117-FL, 2014 WL 694850, at *5 (E.D.N.C. 21 Feb. 2014) ("A supervisory official may not be held liable based upon a theory of *respondeat superior*, because *respondeat superior* generally is inapplicable in § 1983 suits." (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)))).

In addition, to the extent that the claims against Sheriff Williams are in his official capacity, those claims are against his employer, presumably the county employing him. *See, e.g., Wyche v. City of Franklinton*, 837 F. Supp. 137, 144 (E.D.N.C. 1993) ("A suit against a city

official in his official capacity is a suit against the city itself.") (citing *Hughes v. Blankenship*, 672 F.2d 403, 406 (4th Cir. 1982))). That county—which is not named as a defendant—faces no liability for Sheriff Williams' conduct because, among other reasons, no actionable wrongdoing is alleged against him. There is no claim against Sheriff Williams' department because a sheriff's department is not a proper defendant in a § 1983 action. *See James v. Lancaster Sheriff's Dept.*, No. 0:13-210-JFA-SVH, 2013 WL 3938962, at *1 (D.S.C. 30 July 2013) (dismissing claims against sheriff's department because it "is not a 'person' amenable to suit under 42 U.S.C. § 1983); *Maraia v. Buncombe County Sheriff's Dept.* No. 1:12cv98, 2012 WL 5336955, at *2 (W.D.N.C. 2 Oct. 2012) ("North Carolina district courts have repeatedly held that a sheriff's department in North Carolina is not an entity capable of suit pursuant to Section 1983.").

## IV. CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that:

1. the following claims be DISMISSED pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(iii):

   a. all claims asserted against Clerk Johnson; and

   b. all claims asserted against Sheriff Williams, whether in his individual or official capacity;

2. the case proceed on the claims against Garrett, Beamon, Watford-Acors, and Acors; and

3. plaintiff's request for injunctive relief be denied without prejudice.

The Clerk is DIRECTED to send a copy of this Memorandum and Recommendation to plaintiff, who shall have until 20 May 2015 to file written objections. Failure to file timely

written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge.

SO ORDERED, this the 6th day of May 2015.

James E. Gates
United States Magistrate Judge